## Case No. 14,555.

### UNITED STATES v. BEATY.

[Hempst. 487.] [1]

Circuit Court, D. Arkansas. May 3, 1847.

PENAL ACTION — FAILURE TO DELIVER MAIL — KNOWLEDGE—DILIGENCE—NEW TRIAL.

1. Every steamboat master, manager, captain, owner, or person having charge thereof, is subject to a penalty of one hundred and fifty dollars

[1] [Reported by Samuel H. Hempstead, Esq.]

24 FED.CAS.—67

under the thirteenth section of the act of 1845, for failing to deliver letters as prescribed in the sixth section of the post-office act of 1825. 4 Stat. 104; 5 Stat. 736.

2. Any person employed on any steamboat failing to deliver a letter to the master, captain, or manager of such steamboat, incurs a penalty of ten dollars. 4 Stat. 104.

3. Before a person can be subject to the penalty of one hundred and fifty dollars for failing to deliver a letter, it must have been brought by him, or intrusted to his care, or within his power; and in a case where he has no knowledge of it, and could not obtain such knowledge by the exercise of reasonable diligence, he is not responsible.

4. Express knowledge on the part of a defendant need not be proved; but it is essential to show such facts and circumstances as render it probable, that a defendant by the use of ordinary and reasonable diligence obtained that knowledge or could have done so, so as to authorize the jury to presume it.

5. The master, captain, manager, or owner are not responsible under the act of 1845, for the conduct of the clerk of the boat in the matter of failing to deliver a letter, where they are ignorant of the existence of such letter, or could not obtain a knowledge of it by the use of reasonable diligence.

6. The law does not require the exercise of the utmost diligence of which the case is susceptible; but only such as rational men ordinarily employ in their own affairs.

7. Where the court has misdirected the jury, a new trial will be granted without imposing costs, or any terms whatever.

Debt on statute, before PETER V. DANIEL, associate justice of the supreme court, and BENJAMIN JOHNSON, district judge, holding the circuit court.

This was an action of debt brought against Robert Beaty, master and owner of the Arkansas No. 4, by the direction of the postmaster-general, on the information of A. Gordon, postmaster at Lewisburg, Arkansas. The declaration filed the 30th of December, 1846, was substantially as follows, namely:

"The United States of America, plaintiffs, by S. H. Hempstead, their attorney, complain of Robert Beaty of a plea that he render unto them one hundred and fifty dollars, which to them he owes and from them unjustly detains. For that the defendant at a time past, namely, on the 16th of June, 1846, being then master, commander, and owner of a certain steamboat called the 'Arkansas No. 4,' then lying and being at the port of New Orleans. (where a post-office of the United States was, and had long theretofore been established with a postmaster thereof,) in the state of Louisiana, and bound and destined for the Arkansas river and the several ports and places on said river, in the district of Arkansas aforesaid; did receive on said Arkansas No. 4, a written letter purporting to have been written by one Moses Greenwood, at said port of New Orleans, dated June 16. 1846, and addressed and directed to one M. Whisler, at Lewisburg, a port and place on said Arkansas river, in the district aforesaid, to be conveyed, transported, and brought by the said steamboat Arkansas No. 4, to the said port and place of

Lewisburg, in the district aforesaid, and to be there delivered, and which said letter did not relate to the cargo of the said steamboat Arkansas No. 4, or any part thereof of that voyage, and whereof the said defendant had notice. And the said plaintiffs in fact further say, that the said letter was conveyed, brought, and transported on and by the said steamboat to the port and place of Lewisburg aforesaid, in the district aforesaid, and that afterwards, namely, on the 30th of June, 1846, the said steamboat Arkansas No. 4, whereof the defendant still continued to be such master, commander, and owner as aforesaid, on the trip and voyage aforesaid, landed at said port of Lewisburg, where a post-office was then and there, and had long theretofore been established, with a postmaster thereof, then and long theretofore had been acting as such, of which the defendant had notice, and that the defendant utterly failed and neglected to deliver the said letter to the postmaster at Lewisburg, or to deposit the same in the post-office there, in manner and form as required by the acts of congress in that behalf provided, although the said postmaster was then and there ready and willing to receive the same, and that the defendant in violation of his duty and contrary to the form and effect of the acts of congress aforesaid, did then and there deliver and place the said letter into the hands of a private person who was not postmaster at Lewisburg aforesaid, nor in anywise an agent of the post-office department, or connected with that post-office, namely, into the hands of one B. W. Owens, to be delivered to the said Whisler, to whom the same was addressed and directed. And the plaintiffs in fact further say, that the said letter was then and there delivered by the said Owens to the said Whisler; contrary to the form and effect of the statute in that behalf made and provided. By means whereof and by force of that statute, an action has accrued to the plaintiffs, to sue for and recover from the defendant, as a penalty for the violation of that statute, the sum of one hundred and fifty dollars above demanded. Yet the said defendant, although often requested so to do, has not paid to the plaintiffs the said sum of money above demanded or any part thereof. To the damage of the plaintiffs of one hundred and fifty dollars, and therefore they sue. S. H. Hempstead, Attorney of the United States for the District of Arkansas."

On the 16th of April, 1847, the defendant, by Daniel Ringo and F. W. Trapnall, his attorneys, filed a demurrer to the sufficiency of the declaration, assigning various causes; but after argument, and on consideration, the court adjudged the declaration sufficient and overruled the demurrer. The defendant then plead the general issue, and the cause was tried by a jury on the 30th of April, 1847, before PETER V. DANIEL, associate justice of the supreme court of the United States, and BENJAMIN JOHNSON, district judge, and a verdict was found for the United States for the amount of the penalty and costs. On the 3d of May, 1847, the defendant filed his motion for a new trial; on the grounds principally that the verdict was contrary to law and evidence, and because the court had misdirected the jury; and this motion was argued and determined at the same term.

S. H. Hempstead, Dist. Atty., for the United States, contended that the motion for a new trial should not be granted; that the charge of the court to the jury was well sustained by principle and authority, and that to establish a different doctrine would enable the post-office acts to be evaded with perfect impunity. He commented on the post-office acts of 1825 and 1845, and then insisted that the master, captain, or manager of a steamboat, was responsible for the acts of those who were under him, and more especially where the master, as in this case, was the owner. The master has the charge of the boat; may employ or discharge such servants as he pleases, and it is difficult to perceive why he should not be responsible for their conduct. They are selected by him, and it is to be presumed that he will be careful to employ competent, discreet, and skilful persons, as his agents or servants, and surely there can be no hardship in holding him liable for their acts. That liability rests upon clear principles of public law, and cannot be denied. In Bussey v. Donaldson, 4 Dall. [4 U. S.] 206, the owner of a vessel was held liable for the negligence of the pilot, on the ground that he was the agent or servant of the owner, although not chosen by him, but placed in his service by an act of the legislature. And so the captain of a steamboat is responsible for the acts of the pilot. Denison v. Seymour, 9 Wend. 9; 1 Taunt. 569; 14 Johns. 304; Nicholson v. Mounsey, 15 East, 383; 6 Mees. & W. 499, 510. Masters of ships are responsible for the negligences, nonfeasances and misfeasances of subordinate officers and others employed by and under them. Story, Ag. 314, 316, 317; 14 Pick. 71. The clerk of the boat was the agent of the master, and the act of the clerk was the act of the master, on that received maxim of law, "Qui facit per alium facit per se." The actual knowledge of the master cannot be material. He is bound with or without knowledge on the footing of responsibility for the conduct of the clerk, his servant and agent. If any knowledge is necessary, the law intends it to exist, and will not allow any proof to the contrary; any more than allow proof of the ignorance of the law as an excuse. If clerks or servants on a steamboat may receive letters, put them in their pockets, and deliver them out to the persons to whom they are addressed, without making the master or owner liable unless knowledge is brought home to him by the government, an important part of the post-

office act is a dead letter. because it can be successfully evaded. All that a master of a steamboat would have to do would be to shut his eyes to these violations of law, and escape responsibility. All he would have to do would be to plead ignorance, and that would be potent enough to defeat this kind of prosecution. Such a construction of the post-office act could never have been anticipated. If the law is unpopular, let it be repealed by congress; not destroyed by judicial construction. The principle contended for has not the effect of making the principal or master responsible criminally for the act of the agent or clerk. Undoubtedly it is a general rule of law, that a principal cannot be held amenable for the crimes and misdemeanors of the agent. without participation in them. Even that rule. though general, is not universal; for the principal is said to be sometimes liable in a criminal suit. Story, Ag. 452, and cases there cited. But this is a civil, not a criminal proceeding; and although a fixed penalty is in question, yet it is like the recovery of unliquidated damages against the principal. for the wrong of the servant. It is no more criminal than that, and stands on the same footing. In the one case the agent violates the rights of a fellow man; and in the other he violates the rights of the government. In both, he acts against law; and that law affords a vindication through its ministers, for the wrong. in the shape of a pecuniary compensation,—in one instance. to an individual; in the other, to the government.

Daniel Ringo and F. W. Trapnall, for defendant, and for the motion. examined and commented on the post-office acts at length, and then argued that the court had misdirected the jury in point of law, and for which error a new trial should be granted, and without costs. There was no evidence to prove that the defendant had the slightest knowledge of the existence of the letter in question. and that it was manifest that the clerk of the boat acted on his own responsibility as to its reception and delivery. and without the sanction of the defendant. The letter was never in the care or within the power of the defendant. because he was ignorant of it. It could not have been intended by congress to inflict a heavy penalty on the master of a steamboat for the non-delivery of a letter of which he knew nothing. and could have ascertained nothing by the exercise of reasonable diligence. It may be admitted. that if a master has the means of ascertaining the existence of a letter. and does not choose to do it. he cannot escape liability. But this case has no such feature in it. There are no facts or circumstances from which knowledge might be implied by the jury. That there must be knowledge on the part of the master. is evident; and not until the moment he is affected with it. could he possibly be said to be a particeps criminis with the clerk or servant in the violation of the law; and there then might be some more plausible reason for inflicting the penalty than at present. But without knowledge, express or implied, to hold him liable, would in reality amount to making the master answerable for the criminal act of the servant, which is contrary to the well-established doctrines of law. This is not in form a criminal proceeding. but is so in its nature; and the attempt of the district attorney to assimilate it to a civil suit for damages, must fail. There is no analogy between the two. The defendant here, in the form of an action of debt, is prosecuted by the law-officer of the government for a violation of a highly penal law, and a large penalty is claimed for that violation. It is, therefore, totally different from a mere civil, personal suit for damages for an injury received from an agent or servant. If knowledge is essential to a recovery on the part of the government, as we think is clear, a new trial must be granted; for it is not pretended that there was any evidence conducing to prove any thing of the kind.

JOHNSON, District Judge. This suit was brought for the recovery of the penalty provided for a violation of the thirteenth section of the post-office act of 1845 (5 Stat. 736). That section declares in substance that nothing contained in the last-named act shall have the effect, or be construed to prohibit the conveyance or transportation of letters by steamboats, as authorized by the sixth section of the act of 1825 regulating the post-office department (4 Stat. 104), provided that the requirements of such sixth section be strictly complied with, by the delivery, within the time specified by that act, of all letters so conveyed not relating to the cargo or some part thereof, to the postmaster at the post or place to which such letters may be directed or intended to be delivered over from the boat; but it is expressly enacted that all the pains and penalties provided by that act for any violation of the provisions of the eleventh section thereof shall attach in every case to any steamboat, or to the owners and persons having charge thereof, the captain, or other person having charge of which, shall not comply with the requirements of the sixth section of the act of 1825. The eleventh, by reference to previous sections, fixes the penalty at $150, and to recover which this action of debt has been instituted. The sixth section of the act of 1825. above referred to enacts substantially that it shall be the duty of every master or manager of any steamboat which shall pass from one post or place to another in the United States, where a post-office is established. to deliver within three hours after his arrival, if in the daytime. and within two hours after the next sunrise, if the arrival be in the night, all letters and packets addressed to or destined for such post or place to the postmaster there; and if any master or manager of a steamboat shall fail so to deliver any letter or packet which shall have been brought by him, or shall have been

in his care or within his power, he shall incur the penalty therein prescribed; and every person employed on board any steamboat shall deliver every letter and packet of letters intrusted to him to the master or manager of such steamboat before the vessel shall touch at any other post or place; and for every failure or neglect so to deliver, a penalty of ten dollars shall be incurred for each letter or packet. 4 Stat. 104. These constitute the substance of the post-office acts, as far as applicable to the present case.

On the trial, the plaintiff proved that Robert Beaty, the defendant, was the master and owner of the steamboat Arkansas No. 4; that upon her arrival at Louisburg, in this state, from the city of New Orleans, at each of which places a post-office had been established, the clerk of the boat was in possession of a letter bearing date at New Orleans, written by M. Greenwood, residing there, and directed to M. Whisler at the town of Louisburg, and that the letter did not relate to the cargo of the boat, or any part thereof; and that on the arrival of the boat at Louisburg, the postmaster there demanded the letter of the clerk of the boat, who refused to deliver it to him, but did deliver it to a private individual, who handed it to the person to whom it was addressed; and that it was not placed in the post-office at all. This was the substance of the evidence on the part of the plaintiffs. There was no evidence adduced, other than the above, to prove that the defendant had any knowledge that the letter was on board the boat, or in the possession of the clerk, or that it was in his power, or that he knew of the failure and refusal of the clerk to deliver this letter to the postmaster at Louisburg upon the arrival of the steamboat there.

Before the jury retired, at the request of the district attorney, the court, by the presiding justice (the Hon. PETER V. DANIEL), instructed them that the defendant, as master of the boat, was responsible for the acts of the clerk; and if they found from the evidence that he received the letter at New Orleans and brought it up to Louisburg, and there failed to deliver it to the postmaster, and 'that the letter did not relate to the cargo of the boat, or any part thereof, the defendant was subject to the penalty, although he was in fact ignorant of its delivery at New Orleans, of its transmission, and of the failure of the clerk to deliver it to the postmaster at Louisburg. The jury found a verdict for the plaintiff for the penalty of $150, and the defendant has interposed this motion for a new trial, on the ground of misdirection on the part of the court. Upon looking into the acts of congress imposing this penalty, and giving them the best consideration of which I am capable, I am of opinion that we erred in the instructions we gave to the jury, and which doubtless influenced their finding.

By the terms of the act of congress, the defendant is subject to the penalty prescribed when he fails to deliver any letter or packet to the postmaster, which shall have been brought by him, or shall have been in his care or within his power. Now, as already observed, there was no evidence adduced to the jury from which they could presume that the defendant had brought the letter, or that it was in his care or within his power. In either of these cases, the letter must have been within his knowledge, for it could hardly be said to be brought by him, or to be in his care or within his power, according to the obvious meaning of the act, if he was ignorant of the existence of the letter, its conveyance, and destination. The clerk alone was proved to have had the letter at Louisburg, in the absence of the defendant; and for any thing that appeared from the evidence, the clerk may have received the letter at New Orleans, secretly, kept it in his own possession, and failed to deliver it to the defendant, or inform him that he had it, or place it in a situation to enable him to obtain a knowledge of it, or bring it to the knowledge of the defendant in any way. It is not necessary to bring express knowledge home to the defendant, and the court is not to be so understood. But it is essential to show such facts and circumstances as render it probable that the defendant, by the use of ordinary and reasonable diligence, obtained that knowledge, or could have done so, and thus authorize the jury to presume it. If, in the absence of all knowledge, the master or captain or owner of the steamboat is absolutely responsible under this act for the conduct of the clerk, as the district attorney insists, and as we instructed the jury, then the verdict was right; for in that view, the liability was clearly established, and the case fully made out on the part of the government. But under the circumstances of the case, I think, as already stated, that we erred in instructing the jury that the defendant was responsible for the acts of the clerk; that it was not material whether the defendant did or did not know of the existence of the letter, and that in either event he was equally liable for the penalty, provided the letter was delivered to the clerk, brought up by such clerk, and not delivered to the postmaster at Louisburg, according to the sixth section of the act of 1825. The clerk, for every failure or neglect to deliver to the master of the boat any letter or packet of letters intrusted to him before the vessel touches at any other place, incurs a penalty of ten dollars. 4 Stat. 104. It would seem strange indeed, that the clerk should be subjected to the penalty of ten dollars only for a wilful failure to deliver the letter to the master of the boat, and the master subjected to the penalty of one hundred and fifty dollars for an omission to deliver a letter, of the existence of which he was entirely ignorant. The act is penal in its consequences, and must be strictly construed: and as knowledge is generally a principal and indispensable ingre-

dient in offences, it would seem reasonable to hold the government to the proof of it, or to the proof of circumstances from which it might be fairly inferred, before the penalty can be demanded.

The master of a steamboat is liable for this penalty when he fails to deliver a letter or packet which has been brought by him, or was in his care, or was in his power; but, in my judgment, the sound construction of the acts of congress is, that the defendant could not be placed in this category at all, where the letter was not within his knowledge, nor placed in a situation to enable him, with the use of reasonable diligence, to obtain such knowledge. Knowledge on his part, express or implied, I regard as essential to his liability, and without which the acts of congress have no application, and do not embrace the case. It is not to be supposed that it was the intention of the lawmaker to inflict a penalty upon the master of a steamboat in a case where he was ignorant that a letter had been brought upon the boat, either by the clerk or any person employed on board, and had not the means of ascertaining the fact by the use of reasonable diligence. This would be little less unjust than the disreputable device of the Roman tyrant who placed his laws and edicts on high pillars, so as to prevent the people from reading them, the more effectually to ensnare and bend the people to his purposes.

For these reasons, I think a new trial ought to be granted, and it is so ordered; but, as it was the error of the court which renders this necessary, the costs must abide the event of the suit. Ordered accordingly.

On the second trial, which was had 22d April, 1848.—the Hon. BENJAMIN JOHNSON, district judge, presiding; the Hon. PETER V. DANIEL, associate justice of the supreme court of the United States, absent, —the plaintiffs, in addition to the evidence on the previous trial, proved that the letter in question was, on its reception at New Orleans, placed by the clerk of the Arkansas No. 4 with other letters in the letter box of the boat, and impressed with the boat stamp; that the defendant at all times had access to this letter box, and that it was his habit to examine and see what letters were placed on the boat; but there was no other proof as to his knowledge of the letter.

JOHNSON, District Judge, instructed the jury, that by the act of congress of 1845, § 13 (5 Stat. 736; 4 Stat. 104), the master of a steamboat is liable for a letter brought by him, or committed to his care, or within his power. It is the province of the jury to determine from the evidence whether the letter in question was either brought by the defendant, or committed to his care, or was within his power. If so, he is subject to the penalty of one hundred and fifty dollars claimed by the plaintiffs. Was it in his power by the use of reasonable diligence?

The law, in my judgment, does not require the exercise of the utmost diligence of which the case was susceptible. It only requires such diligence to discover the letter as rational men ordinarily employ in their own affairs; and of this the jury must judge.

Verdict and judgment for plaintiffs for one hundred and fifty dollars penalty and costs, and motion for a new trial denied.